IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>THOMAS J. TROUBA,<br><br>              Defendant. | **8:20-CR-316**<br><br><br>**MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER** 28 U.S.C. § 2255 **AND VARIOUS OTHER MOTIONS** |

## I.    INTRODUCTION

This matter is before the Court on various Motions filed by the defendant. The defendant was sentenced on January 5, 2023, to 120 months' incarceration, following a plea of guilty to a drug conspiracy. Filing 127 (Text Minute Entry); Filing 135 (Judgment). Chief among the defendant's Motions is his timely pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, which asserts four grounds for relief, all related to ineffective assistance of counsel. Filing 194. For the reasons stated below, the defendant's Motion to Vacate, Set Aside, or Correct under 28 U.S.C § 2255 is denied. Also before the Court are various other pro se Motions filed by the defendant. These include a Motion to Return Property, Filing 177; Filing 178, a Motion for Appointment of Counsel, Filing 201, a Motion for Copies, Filing 207, a Motion to Recuse, Filing 207, and a Motion for Compassionate Release, Filing 207. The Court will refer the Motion to Return Property to U.S. Magistrate Judge Ryan C. Carson to conduct an evidentiary hearing and draft a Findings and Recommendation. The Court denies the Motion for Appointment of Counsel as it pertains to the Motion under 28 U.S.C § 2255 but refers the Motion to the magistrate judge as it pertains to the Motion to Return Property. Finally, the Motion for Copies, Motion to Recuse,

and Motion for Compassionate Release are denied. The Court will not issue a certificate of appealability.

## II.    BACKGROUND

The facts and procedural history of this case are somewhat complex. On September 18, 2020, an individual made a bomb threat at Douglas County Courthouse in Omaha, Nebraska, by placing two U.S. Postal Service boxes at the courthouse's entrance. Filing 50 at 9–11. A bomb squad was called to safely detonate the packages. Filing 50 at 22. Law enforcement identified the individual who placed the packages as the defendant. Filing 50 at 13–15. A deputy with the Douglas County Sheriff's Office drove to the defendant's residence in an unmarked police vehicle. Filing 50 at 44–45. When he arrived, the deputy observed the defendant removing large totes and duffel bags from the defendant's residence and loading them into a pickup truck. Filing 50 at 46. The defendant then drove away in the truck, and after driving a few minutes, the defendant voluntarily stopped in a parking lot where deputies approached him. Filing 50 at 67. Once the defendant provided identification, deputies detained him for the bomb threat. Filing 50 at 67, 85.[1] The deputies contacted a bomb squad unit to bring a bomb dog to the scene. Filing 50 at 68.

While waiting for the bomb dog, deputies walked around the defendant's truck and looked through the windows. Filing 50 at 51, 69–70. A deputy smelled marijuana emanating from one of the rolled down windows of the truck and saw a cardboard box on the driver's seat with a large amount of bulk currency wrapped in rubber bands. Filing 50 at 51. Another deputy who later arrived also smelled marijuana coming from the truck. Filing 50 at 32. The officers opened the truck and conducted a warrantless search based on the smell of marijuana, the large bulk currency, and the bomb threat. Filing 50 at 52–53, 60, 73–74. The search yielded a large amount of marijuana

---

[1] According to the record, the defendant made the bomb threat after he was dissatisfied with his treatment in traffic court. Filing 168 at 2.

and other narcotics along with over $400,000 in cash. Filing 50 at 33; Filing 151 at 26. Based on the items recovered in the defendant's truck, law enforcement officers obtained and executed a search warrant at the defendant's residence. During the search, investigators noticed multiple surveillance cameras in the house, keypad door locks on some of the doors, instruments used for manufacturing and packaging narcotics, and numerous narcotics. Filing 151 at 34. Officers also discovered that the defendant had modified his home to create secret compartments to store drugs and cash. Filing 151 at 73–74. Investigators identified three accounts belonging to the defendant that contained suspected proceeds from drug dealing, and evidence showed that the defendant used at least two of these accounts to execute drug sales. Filing 151 at 94–97, 107–109.

On November 20, 2020, the Government filed a two-count Indictment charging the defendant with (1) conspiracy to distribute and possess with intent to distribute a mixture or substance containing marijuana, a mixture or substance containing tetrahydrocannabinol, and a mixture or substance containing 3,4-methylenedioxymethamphetamine; and (2) possession with intent to distribute those three substances. Filing 1 at 1–2. The Indictment also included a Forfeiture Allegation for the defendant's residence and several hundred thousand dollars in United States currency seized from the defendant's truck and his accounts. Filing 1 at 2–3; Filing 41 at 1.

The defendant filed a Motion to Suppress on April 9, 2021. Filing 32. The magistrate judge held an evidentiary hearing, Filing 45 (Text Minute Entry), and recommended that the Motion to Suppress be denied, Filing 51. The defendant objected, Filing 52, and the Court overruled the objection, accepted the magistrate judge's Findings and Recommendation, and denied the Motion to Suppress. Filing 54. Shortly thereafter, defense counsel moved for a psychological evaluation to determine competency. Filing 56. The magistrate judge held a competency hearing and

considered the defendant's forensic evaluations, Filing 69 (Text Minute Entry), and determined that the defendant was indeed competent to stand trial or otherwise proceed, Filing 74.

Subsequently, counsel for the defendant[2] filed a Motion to Withdraw, Filing 79, and then-United States Magistrate Judge Susan M. Bazis conducted an ex parte hearing on the Motion, Filing 82 (Sealed Audio File), which the Court has reviewed. Defense counsel stated that the defendant lacked faith and trust in defense counsel, was not adequately communicating with defense counsel, and began insisting on fruitless courses of action. Filing 82. Defense counsel indicated difficulty negotiating with the Government, as the defendant rejected a plea agreement offer but did not give defense counsel permission to make a counteroffer. Filing 82. Upon questioning by the magistrate judge, the defendant twice acknowledged that the source of his discontent was not defense counsel, but the Government. Filing 82. The defendant agreed with the magistrate judge that his issue was with the Government's refusal to negotiate on the forfeiture issue, not anything to do with his lawyer. Filing 82. The defendant further expressed discontent with his ability to receive treatment during his detention. Filing 82. The defendant was troubled by the prospect of losing his house and other assets and indicated frustration that the Government was insistent on forfeiture of the defendant's house. Filing 82. Ultimately, satisfied that defense counsel had been and would continue to effectively serve the defendant, the magistrate judge denied the Motion to Withdraw. Filing 82.

The defendant then entered into a Rule 11(c)(1)(C) plea agreement to a term of incarceration of not more than 120 months in exchange for his plea of guilty to Count I of the

---

[2] In the Declaration of Steven J. Lefler, one of the defendant's former counsels of record, Mr. Lefler states that he "was always [the defendant's] attorney[,] . . . authored the documents, and had full control of [the defendant's] defense." Filing 204-1 at 4. Mr. Lefler explains that other lawyers in his office would sometimes "file some documents" for Mr. Lefler, but nothing more. Filing 204-1 at 4. Nowhere does the defendant dispute that Mr. Lefler alone was "his attorney" and therefore the target of his claims of ineffective assistance.

Indictment, the drug conspiracy. Filing 92. The plea agreement also preserved the defendant's right to appeal the Court's order denying his Motion to Suppress and provided that the Court would hold a hearing on the defendant's challenge to forfeiture. Filing 92. The defendant entered a change of plea on July 21, 2022, which the magistrate judge recommended be accepted. Filing 88. The Court accepted the defendant's plea of guilty on August 18, 2022. Filing 96. The Court then held a forfeiture hearing on October 31, 2022. Filing 108 (Text Minute Entry). In a November 29, 2022, Order, the Court ruled against the defendant, finding that his residence along with $427,417.75 were subject to forfeiture under 21 U.S.C. § 853. Filing 112; Filing 125.

After the Court ordered forfeiture of the defendant's property, defense counsel filed another Motion to Withdraw. Filing 114; Filing 115. Defense counsel explained that the impetus for withdrawal was the defendant's displeasure with defense counsel's performance. Filing 122 (Sealed Audio File). Defense counsel explained that the defendant would not accept the legal correspondence mailed to him. Filing 122. When asked if he was frustrated with counsel, the defendant stated, "I can't confirm or deny." Filing 122. Later, the defendant admitted that the issue was his own inability to communicate, with defense counsel and in general. Filing 122. Noting that the defendant was already scheduled for sentencing pursuant to a Rule 11(c)(1)(C) plea agreement, the magistrate judge ultimately denied the Motion to Withdraw. Filing 121 (Text Minute Entry).

On January 5, 2023, the Court sentenced the defendant to 120 months' incarceration, the maximum term permitted by the plea agreement, to be followed by three years of supervised release.[3] Filing 127 (Text Minute Entry); Filing 135 (Judgment). The Court denied the defendant's

---

[3] A previous Order misstated the defendant's sentence due to a clerical error. Filing 200. The Court has stricken that previous Order and issued an Amended Order that remedies this oversight. Filing 208. The defendant is not entitled to any relief on this basis. *See* Fed. R. Crim. P. 52(a).

Motion to Stay Forfeiture pending appeal, Filing 157, and then entered a Final Order of Forfeiture on June 23, 2023, Filing 163. On December 11, 2023, the Eighth Circuit Court of Appeals issued a per curiam order affirming the Court's denial of the defendant's Motion to Suppress, Filing 168, and later denied a Motion to Rehear, Filing 173.

On January 22, March 22, and April 22, 2024, the defendant filed various requests for relief. Filing 171; Filing 177; Filing 178. The Court denied each request, except for the defendant's Motion to Return Property. Filing 188. After ordering the Government to respond, the Court ordered that an evidentiary hearing be held on the Motion to Return Property and appointed the Federal Public Defender to represent the defendant. Filing 192.[4]

On December 26, 2024, the defendant filed a timely Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C § 2255. Filing 194. In his Motion, the defendant asserts four grounds for relief, all related to ineffective assistance of counsel. Filing 194. These grounds are as follows: "Defendant received two competency evaluations prior to entering a plea; Counsel did not raise competency at time of plea"; "Communications had broken down between Defendant and Counsel during the proceedings"; Counsel failed to explain the changes in the plea at the change of plea hearing"; and "Trial counsel was representing another client who was a potential witness against Defendant." Filing 194. The defendant seeks counsel for his Motion under 28 U.S.C § 2255. Filing 201 at 1. After conducting an initial review, the Court ordered the Government to respond to several of the defendant's allegations. Filing 196. The Government filed a response on March 11, 2025, and stated its position that this Motion should be denied without hearing. Filing 203. The defendant filed a reply to the Government's response on March 24, 2025. Filing 206.

---

[4] The defendant requests that new counsel be appointed for the Motion to Return Property. Filing 201 at 1. The Court will order that the magistrate judge decide this issue prior to holding an evidentiary hearing on the Motion.

Finally, on March 31, 2025, the defendant submitted a Motion requesting various forms of relief. Filing 207. The defendant requests "copies of all [his] case and documents including transcripts." Filing 207 at 1. The defendant also requests that the undersigned judge recuse himself. Filing 207 at 2. Lastly, the defendant requests a "reduction in sentence due to hardship of lack of treatment for his autism in BOP," which the Court will treat as a Motion for Compassionate Release. Filing 207 at 2.

### III.    PRELIMINARY MATTERS

Before ruling on the defendant's Motion under 28 U.S.C. § 2255, the Court will address his Motion to Recuse, Motion for Copies, and Motion for Appointment of Counsel.

In his Motion to Recuse, the defendant seeks the undersigned judge's recusal "due to conflict of interest." Filing 207 at 2. The defendant provides no reasons or grounds why the undersigned judge should recuse. The only possible ground for disqualification under 28 U.S.C. § 455 that could have any application here (that is, the only ground not related to the undersigned judge's previous practice, personal knowledge, or fiduciary interests) is where the judge "has a personal bias or prejudice concerning a party." The undersigned judge has no personal bias or prejudice concerning the defendant, nor has defendant alleged any. The Supreme Court has stated that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Because the undersigned judge does not have a "deep-seated . . . antagonism" toward the defendant, the Motion to Recuse is without merit and is denied.

In his Motion for Copies, the defendant seeks free copies "of all discovery and transcripts for all hearings [and] all emails of US Attorney [and] lawyers." Filing 207 at 1. The defendant requests these documents so he can "modify [his] 2255 [Motion] to be more accurate." Filing 201 at 1. Under 28 U.S.C § 2250, indigent petitioners are entitled to free copies "of such documents or parts of the record on file in his office as may be required by order of the judge before whom the application is pending." Regarding transcripts, another statute provides,

> Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.

28 U.S.C. § 753(f). Because the defendant's Motion under 28 U.S.C. § 2255 is frivolous, the request for transcripts is denied. The defendant's failure to identify why transcripts are necessary "to decide the issue presented" is an independent reason to deny the request. Regarding other requested documents, these are not "parts of the record on file" under 28 U.S.C § 2250, and Rule 6 of the Rules Governing Section 2255 Proceedings requires "good cause" for leave to conduct discovery. The defendant lacks good cause to have these items produced. The Motion for Copies is therefore denied.

In his Motion for Appointment of Counsel, the defendant requests "a new lawyer for said 2255" Motion. Filing 201 at 1.[5] "There is no general right to counsel in post-conviction habeas proceedings for criminal defendants." *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir.1999). Rule 8 of the Rules Governing Section 2255 Proceedings provides, "If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to

---

[5] The defendant also seeks new counsel for his Motion to Return Property. Filing 201 at 1. As discussed below, the Court will order that the magistrate judge address this issue before holding an evidentiary hearing on the Motion.

have counsel appointed under 18 U.S.C. § 3006A." But for the reasons stated below, an evidentiary hearing is not warranted on the defendant's Motion under 28 U.S.C § 2255. Because the defendant is not entitled to appointed counsel on this matter, the Motion for Appointment of counsel is denied as it relates to the Motion under 28 U.S.C § 2255.

## IV.    MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The defendant raises four grounds of ineffective assistance in support of his Motion under 28 U.S.C. § 2255, as follows: counsel's failure to raise competency; counsel's inadequate communication; counsel's failure to explain the plea agreement; and counsel's conflict of interest. The Court will discuss in turn each of these grounds, all of which are denied.

### A.  Applicable Standards

The defendant brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 143 S. Ct. 1857, 1865 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under 28 U.S.C § § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

Under the Supreme Court's test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "'whether counsel's performance was deficient,' and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (citing *O'Neil v. United States*, 966 F.3d 764, 770 (8th Cir. 2020); *Strickland*, 466 U.S. at 686). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). Under the first prong (deficiency), there exists "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Camacho v. Kelley*, 888 F.3d 389, 394 (8th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (citations omitted). Under the second prong (prejudice), petitioners must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (internal quotation marks and citation omitted). A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

The Eighth Circuit has stated, "No hearing is necessary 'if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016). Further, no hearing is necessary where "the record include[s] all of the information necessary for the court to rule on the motion." *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004).

10

## B.  Defense Counsel's Alleged Failure to Raise Competency

The defendant's first ground for relief is that counsel failed to adequately raise the issue of the defendant's competency. The specific allegations state,

> Defendant received a competency evaluation indicating he was not competent to proceed. The Government conducted a second competency evaluation that stated Defendant was competent to proceed. Based upon the competency evaluations. Defendant was prescribed mental health medications. Defendant was only on the psychiatric meds for three weeks before his plea hearing. Defendant advised his counsel that he was suffering strong side effects from the medication that interfered with his ability to follow the court proceedings. Counsel insisted Defendant proceed with the plea that day stating that Defendant would receive a higher sentence if he continued the plea hearing. Defendant had explained all of his concerns to his cousel prior to the hearing. Defendant had sent multiple letters to the court regarding his dissatisfaction with counsel' representation and counsel filed several motions to withdraw citing irreconsilable differences prior to the change.

Filing 194 at 4 ([sic] throughout). The Government argues that this ground fails because the defendant "was adjudicated to be competent and has presented no evidence that had not already been considered." Filing 203 at 8. The Government also points out that the defendant stated that he was competent and was found to be competent at the change-of-plea hearing. Filing 203 at 8–9. The Court agrees with the Government.

Defense counsel's performance was not "deficient" because, contrary to the defendant's assertions, defense counsel obtained a psychological evaluation and competency hearing for his client, at which defense counsel vigorously argued the issue. Filing 56. In other words, the defendant's assertion that defense counsel failed to raise the competency issue is patently false. The magistrate judge ruled against the defendant because the defendant was competent, not because defense counsel's performance on this issue was deficient. Filing 74 (Order finding the defendant competent to stand trial). Because the defendant's allegations are "contradicted by the record" and "inherently incredible," *Walker*, 810 F.3d at 580, the defendant's first ground for relief is denied.

11

Alternatively, even if defense counsel was somehow "deficient," the defendant was not "prejudiced" because the defendant was not incompetent. A defendant is mentally incompetent to stand trial if "he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The Eighth Circuit has stated,

> The district court may base its competency decision on numerous factors, including expert medical opinions and the court's observations of the defendant's demeanor. Presence of a mental illness does not equate with incompetency to stand trial. Even expert opinion on competency rises no higher than the reasons on which it is based; it is not binding upon the trier of the facts.

*United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009) (quotations, citations, and alterations omitted).

The defendant undoubtedly struggles with mental illness, but the evidence overwhelmingly demonstrates that he was competent throughout the pretrial process. The magistrate judge had ample opportunity to observe the defendant over the course of several hearings, and de novo review of those hearings by this Court demonstrates that the defendant was competent. The defendant's conduct and demeanor at these hearings is consistent with defense counsel's declaration that the defendant would "claim[ ] to not understand" some pretrial proceeding, but his words and actions [would] belie that assertion." Filing 204-1 at 2. For instance, at the first Motion to Withdraw hearing, Filing 82, the defendant demonstrated his understanding of "the nature and consequences of the proceedings against him" and his ability "to assist properly in his defense." 18 U.S.C. § 4241(d). The defendant expressed dissatisfaction with the Government's insistence on criminal forfeiture during the plea agreement negotiation phase. Filing 82. The defendant even argued to the magistrate judge that criminal forfeiture was legally inappropriate and that he was entitled to suppression as a matter of law. Filing 82. Although these arguments ultimately failed, Filing 54 (denying Motion to Suppress); Filing 112 (Memorandum and Order concluding that the

12

defendant's property was subject to criminal forfeiture), they demonstrated the defendant's evident knowledge of the proceedings and consequences.

The defendant's claims of incompetence are further belied by his own statements under oath. At his change-of-plea hearing, the defendant stated under oath that his medication did not affect his ability to think clearly and that he felt competent enough to proceed. Filing 95 at 9. He also stated that he understood the elements of the crime charged, the statutory penalties, the guideline scheme, his plea agreement and appeal waiver, his change-of-plea petition, the possibility of forfeiture, and the collateral consequences of a felony conviction, among other things. Filing 95. In light of his statements under oath, the defendant's "later conclusory claim that he did not understand what was going on rings hollow." *United States v. Bahena*, 223 F.3d 797, 806–07 (8th Cir. 2000). Thus, this ground fails in the alternative because the defendant was competent to stand trial and was therefore not prejudiced by defense counsel's performance.

### C. Defense Counsel's Allegedly Inadequate Communication

The defendant's second ground for relief is that counsel failed to communicate with him. The specific allegations state,

> Defendant filed multiple letter with the District Court complaining about counsel and stating communication had broken down between them making pretrial decisions difficult if not impossible to discuss. Counsel filed two motions to withdraw before the plea hearing citing the breakdown in communication. Attorney Matthew J. Burns filed the first motion to withdraw arguing the breakdown in communication. After hearing the motion was denied. Defendant then had attorney Steven J. Leffler representing him. Defendant filed letters with the court stating communication had broken down. Attorney Leffler filed a motion to withdraw, which was also denied after hearing. As a consequence of the Court's ruling, Defendant was forced to continue with counsel that he could not communicate with during the proceedings.

Filing 194 at 5 ([sic] throughout).

Here, "the petitioner's allegations, accepted as true, would not entitle the petitioner to relief." *Walker*, 810 F.3d at 580. The defendant does not contend that the breakdown in

13

communication was due to any deficiency by defense counsel. In fact, the defendant does not explain why there was any breakdown at all. This ground is therefore denied because it fails to assert an entitlement to relief.

This ground is also denied because but the defendant's allegations are "contradicted by the record" and "inherently incredible." *Walker*, 810 F.3d at 580. While true that defense counsel twice moved to withdraw, the defendant's actions and not defense counsel's performance prompted these Motions. By his own admission during the first Motion to Withdraw hearing, the defendant's ire was against the Assistant United States Attorney, not defense counsel. Filing 82. Further, during the second Motion to Withdraw hearing, the defendant acknowledged that his own "communication skills" were to blame for any breakdown in communication. Filing 122. Thus, defense counsel's performance was not deficient.

Finally, this ground is denied because the defendant was not prejudiced by any breakdown in communication. As discussed in greater length with regards to the defendant's third ground for relief, the defendant knowingly and intelligently entered into a plea agreement which left only two things for the Court's consideration: forfeiture and the term of incarceration. For the reasons explained in a previous Memorandum and Order, Filing 112, forfeiture was legally correct, and there was nothing defense counsel could have done to change that outcome. Regarding sentencing, the Court sentenced the defendant to 120 months' incarceration, the high-end of the Rule 11(c)(1)(C) plea agreement range. But the Court advised the defendant during the forfeiture hearing,

> I'm just going to be frank here. I'm sitting here listening to all this. I don't know if I am convinced that 120 months is enough time in jail for this defendant given -- I mean, it's getting worse and worse as we go along with this defendant. I may not even accept the plea agreement.

14

Filing 151 at 92–93. Ultimately, the Court accepted and followed the Rule 11(c)(1)(C) plea agreement. Filing 135 (Judgment). At the sentencing hearing, the Court explained its reasoning for sentencing the defendant to the high-end of the permitted range, as follows:

> The nature and circumstances of the offense as well as the severity support an upward variance. The defendant was trafficking a significant amount of narcotics as the evidence -- as the forfeiture hearing showed. He was manufacturing narcotics in his residence.
>
> Looking at the specific history and characteristics of the defendant, I know that the allegations in Defendant's PSR show that prior drug convictions did not deter Defendant from committing the instant offense.
>
> I also believe that a downward variance would not afford adequate deterrence and, in fact, the facts in this situation support an upward variance. The defendant had a very significant drug distribution enterprise. The seizure of over $400,000. Mr. Trouba did not have any legal job that could possibly allow him to make anything close to that and he – he made all this money at a very young age. He was obviously a very good businessman. Unfortunately, the business that he was in was illegal.
>
> And this notion, well, it's only marijuana is like, well, you know what you can't do? You can't traffic tobacco either. And you can't traffic alcohol either. You have to have a license and have government approvals to sell all that stuff. And -- and -- and then this notion, well, it's okay. Well, it's still against federal law for -- for marijuana and what he did was blatantly against the law. It just was.
>
> And, you know, one thing that really occurred to me is the -- when we heard the forfeiture hearing was the great lengths the defendant went to [ ] conceal his product and other things in his house. I mean, you had stairs that flipped up so you could hide stuff behind them. You know, it was -- it was quite an elaborate enterprise, and so the bottom line is this isn't in my view a normal situation, and, quite frankly, I think Mr. Trouba should be happy his lawyer's negotiated a – a plea agreement that capped what the -- what the sentence could be in this case because, quite frankly, 120 months in my view is a pretty good deal because it could have been much worse, and I think the facts of the situation justified it being much worse given the egregious nature of what we have here.

Filing 152 at 23–24. Thus, the defendant's sentence was based on the substantial factual record set forth in the plea agreement and by the Government at the change-of-plea hearing, not on any deficiency in counsel's performance. Filing 92 at 2–3; Filing 95 at 39–43. In other words, in fashioning an appropriate sentence in this case, the Court relied upon facts to which the defendant agreed, both in signed writing, Filing 92 at 2–3, and orally in open court, Filing 95 at 39–43. No amount of communication between the defendant and defense counsel could have changed the

undisputed factual record in this case. Thus, even if there was any deficiency due to the alleged breakdown in communication, the defendant was not prejudiced. The defendant's second ground for relief is denied for failure to state an entitlement to relief, for absence of deficient performance by defense counsel, and for lack of prejudice to the defendant.

### D.  Defense Counsel's Alleged Failure to Explain Plea Agreement

The defendant's third ground for relief is that counsel failed to adequately explain the plea agreement. The specific allegations state,

> Defendant was confronted with multiple changes to the plea paperwork at the change of plea hearing that he had never seen before. Counsel and the US Attorney had initialed the changes: but Defendant did not agree with the changes and did not sign off on them. Counsel then showed Defendant an email he had received at some time prior to the hearing from the US Attorney. The email stated that if Defendant did not accept the changes, the US Attorney would change the plea to a §851, which materially changed the top end of the plea agreement from 20 years to 30 years. As stated before, Defendant was under the influence of his recently-prescribed psychiatric medication, thus Defendant had a difficult—if not impossible—time following his counsel's explanations of the changes. Defendant only recognized that if he did not take the plea, he would be going to prison for a time substantially greater than the original plea agreement. Defendant felt coerced into signing the agreement.

Filing 194 at 6–7.

The defendant's allegations in this third ground for relief are "contradicted by the record" and "inherently incredible." *Walker*, 810 F.3d at 580. The magistrate judge determined, and the Court agreed above, that the defendant was competent to enter his change of plea. At the change-of-plea hearing, the defendant acknowledged among other things that: he understood the statutory penalties, Filing 95 at 12; he discussed the guidelines with defense counsel, Filing 95 at 13; he limited his right to appeal in his plea agreement, Filing 95 at 14; his property may be subject to forfeiture, Filing 95 at 16; he understood the terms of the plea agreement, Filing 95 at 22; he was "directly involved in the plea agreement" negotiation process and defense counsel reviewed the agreement with him "line by line," Filing 95 at 27–28; he read, understood, and answered every

question on his Petition to Enter a Plea of Guilty, Filing 95 at 28; he read the plea agreement "[m]ultiple times," Filing 95 at 29; he was familiar with a previous iteration of the plea agreement, Filing 95 at 30; he was satisfied by defense counsel's representation, Filing 95 at 31; he understood and waived his right to a trial, Filing 95 at 32; his change of plea was voluntary and free of threat or other inducement besides the plea agreement, Filing 95 at 39; and he agreed with the factual basis for his guilty plea contained in this plea agreement, Filing 95 at 42.

"While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (citing *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir.1985)). The defendant fails to overcome this "formidable barrier." *Id.* Throughout the change-of-plea hearing, the defendant conferred with his counsel and asked the magistrate judge questions several times, demonstrating his awareness of the proceedings. Filing 95. The defendant's knowledgeable statements at his change-of-plea hearing contradict his "later conclusory claim that he did not understand what was going on." *Bahena*, 223 F.3d at 806–07.

As to the defendant's claim that he felt coerced into signing the plea agreement, prior to the change-of-plea hearing, the Government notified the defendant and defense counsel that it could—and implied that it would—file an information under 21 U.S.C § 851 to establish a prior conviction for a felony drug offense if the defendant did not enter its plea of guilty. Filing 204-2. The government stated that the defendant's "maximum penalties would increase to imprisonment up to 30 years, rather than 20, and [term of supervised release] of not less tha[n] 6 years vs. 3 years." Filing 204-2. The defendant does not dispute that the Government could have filed such

an information or that his penalties would have changed as described. Instead, the defendant merely alleges that his plea of guilty was coerced by the prospect of heftier charges. Filing 194 at 6–7. But because the Government's "alleged threats are accurate statements of what the prosecutor might have done if [the defendant] had gone to trial," *Nguyen*, 114 F.3d at 704, the defendant is not entitled to relief on this basis. Accordingly, because the defendant has shown neither deficiency nor prejudice, the defendant's third ground for relief is denied.

### E.  Defense Counsel's Alleged Conflict of Interest

The defendant's fourth ground for relief is that defense counsel was ineffective due to a conflict of interest. The specific allegations state,

> Defendant's counsel [ ] was representing a client who had been accused of providing drugs to minors in exchange for sex. The client accused Defendant of providing the drugs that were given to the minors. By representing both Defendant and the potential witness, Counsel was in clear conflict of interest.

Filing 194 at 8.

To demonstrate entitlement to relief, a "defendant must show that a conflict of interest actually affected the adequacy of his attorney's representation." *United States v. Beckman*, 787 F.3d 466, 490 (8th Cir. 2015) (citation, alterations, and quotations omitted). A "mere theoretical division of loyalties" does not warrant relief. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). "A defendant bears the burden of showing that the conflict 'adversely affected the lawyer's performance.'" *United States v. Reed*, 179 F.3d 622, 624–25 (8th Cir. 1999) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "If a petitioner claiming ineffective assistance of counsel cannot show that a conflict of interest significantly affected counsel's performance, then he must establish deficient performance and prejudice under the ordinary standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014).

18

Here, the defendant does not explain how any "a conflict of interest actually affected the adequacy of his attorney's representation," *Beckman*, 787 F.3d at 490, and instead merely alleges that defense counsel also represented a potential witness. This is insufficient to even allege that an actual conflict of interest existed; to the contrary, "the mere fact that a trial lawyer had previously represented a prosecution witness is not sufficient for a showing of an actual conflict." *Berry v. United States*, 293 F.3d 501, 503 (8th Cir. 2002) (citation and internal quotations omitted). But even if the defendant had sufficiently alleged an actual conflict of interest, he failed to explained how the conflict "adversely affected the lawyer's performance," as required to successfully claim ineffective assistance. *Reed*, 179 F.3d at 625; *see also Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014) (requiring petitioners to "identify a plausible alternative defense strategy or tactic that [his] defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict" (alteration in original) (quoting *Covey v. United States*, 377 F.3d 903, 908 (8th Cir.2004))).

Nor has the defendant demonstrated deficiency and prejudice under *Strickland*. As discussed above, the defendant voluntarily entered into a Rule 11(c)(1)(C) plea agreement that the Court accepted, and the particular facts of his case justified a sentence at the high end of the permissible range. Nothing about defense counsel's representation of a potential witness in the defendant's case caused defense counsel to render deficient counsel nor prejudiced the defendant. To the contrary, the defendant received effective assistance of counsel. Like the defendant's other grounds for relief, this final ground is frivolous. The defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, is denied in its entirety.

**F.  Certificate of Appealability**

No appeal may be taken on a motion under 28 U.S.C § 2255 unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the Court's decision debatable. The defendant's claims of ineffective assistance are all frivolous. Defense counsel was not deficient. Moreover, the defendant was in no way prejudiced by his counsel's performance. Under these circumstances, reasonable jurists would not find it debatable whether to vacate the defendant's sentence under 28 U.S.C § 2255. Therefore, the Court will not issue a certificate of appealability.

**V.    MOTION FOR COMPASSIONATE RELEASE**

In what the Court construes as a Motion for Compassionate Release, the defendant requests "reduction in sentence due to hardship of lack of treatment for his autism in [the Bureau of Prisons]." Filing 207 at 2. 18 U.S.C § 3582(c)(1)(A) provides in relevant part, "The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility." "This requirement is a mandatory claim-processing rule." *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021). Courts in this circuit have consistently held that a defendant "bears the burden of showing that he exhausted his administrative remedies with the BOP before filing a compassionate-release motion." *United States v. Clark*, No. 11-3034, 2020 WL 4507325, at *3 (N.D. Iowa Aug. 5, 2020) (quoting *United States v. Kinley*, No. 16-10018, 2020 WL 2744110, at *2 (W.D. Ark. Apr. 17, 2020)). Because the defendant has not borne his burden of showing that he has exhausted his administrative remedies, the Court cannot rule on the merits of his Motion. The Court must "dismiss unexhausted compassionate-release motions without prejudice." *Houck*, 2 F.4th at 1084. The defendant's Motion for Compassionate Release is therefore denied without prejudice.

## VI.    MOTION TO RETURN PROPERTY

The Court previously ordered that an evidentiary hearing be held and appointed the Federal Public Defender to represent the defendant on his Motion to Return Property. Filing 192. The defendant requests "new representation" on this Motion, averring that he "has had a complete disconnect of contact [and] communication from his lawyer appointed for help returning of property [and] hasn't received any response from [the lawyer] in months." Filing 207 at 2. The Court will refer the Motion to Return Property to the magistrate judge to hold an evidentiary hearing and draft a Findings and Recommendation. The magistrate judge shall also take up the issue raised by the defendant concerning his current representation on this Motion.

## VII.    CONCLUSION

For these reasons, the Court denies the defendant's claims of ineffective assistance of counsel in his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C § 2255. The defendant's other Motions relating to the Motion under 28 U.S.C § 2255 are also denied. The Court

will refer the Motion to Return Property to the magistrate judge to conduct an evidentiary hearing and draft a Findings and Recommendation. Accordingly,

IT IS ORDERED

1. The defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C § 2255, Filing 194, is denied;

2. The defendant's Motion for Copies, Filing 207, Motion to Recuse, Filing 207, and Motion for Compassionate Release, Filing 207, are denied;

3. The defendant's Motion for Appointment of Counsel, Filing 201, is denied as it relates to his Motion under 28 U.S.C § 2255 but remains pending as it relates to the defendant's Motion to Return Property.

4. The Court refers the defendant's Motion to Return Property, Filing 177; Filing 178, to U.S. Magistrate Judge Ryan C. Carson for an evidentiary hearing and to draft a findings and recommendation on the matter. The magistrate judge shall also resolve the defendant's Motion for Appointment of Counsel, Filing 201, as it relates to the defendant's existing counsel appointed to represent him on the Motion to Return Property.

Dated this 15th day of April, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge