IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

THOMAS J. TROUBA,

Defendant.

8:20-CR-316

**MEMORANDUM AND ORDER ON
FINDINGS AND RECOMMENDATION
ON MOTIONS TO RETURN PROPERTY
AND VARIOUS OTHER MOTIONS**

This matter is before the Court on numerous motions related to defendant Thomas J. Trouba's criminal case. The Court first considers United States Magistrate Judge Ryan C. Carson's Findings and Recommendation, Filing 235, on the defendant's Motions to Return Property, Filing 177 and Filing 178. The Court likewise considers the defendant's Objection to Findings and Recommendation. Filing 236. The defendant has filed a Motion Requesting Return of Money, Filing 234, which is also presently before the Court. The Court will also address two additional motions filed by the defendant, Filing 240 and Filing 241, as well as the defendant's Motion to Appoint New Lawyer, Filing 246. For the reasons below, the defendant's Objection is overruled, Judge Carson's Findings and Recommendation is adopted, the defendant's Motions to Return Property are denied, the defendant's Motion to Appoint New Lawyer is denied, and the defendant's remaining motions at Filing 240 and Filing 241 are also denied. As discussed in more detail below, the Government will be required to respond to the defendant's Motion Requesting Return of Money.

1

## I.  RELEVANT BACKGROUND

The background of this case is extensive and has been set out at length in many of the Court's prior orders. *See* Filing 112 at 4–8; Filing 188 at 2–5; Filing 209 at 2–6. Here, the Court will address only the facts pertinent to its present rulings.

In January 2023, the Court sentenced the defendant to a 120-month term of incarceration to be followed by three years of supervised release after the defendant pleaded guilty to conspiring to distribute and possessing with the intent to distribute mixtures of substances containing detectable amounts of marijuana, tetrahydrocannabinol (THC), and 3,4-methylenedioxymethamphetamine, in violation of 21 U.S.C. § 846. Filing 135 (Judgment). The Indictment and a subsequent Bill of Particulars sought forfeiture of several items of property. Filing 1 at 2–4; Filing 41. As part of the defendant's Rule 11(c)(1)(C) plea agreement, he acknowledged that certain property had already been "administratively forfeited," including monies seized from multiple residences and a silver Ford F-150 pickup truck with the Vehicle Identification Number of 1FTFWIETXDKD81352. Filing 92 at 1; Filing 1 at 2–3. Prior to the defendant's sentencing hearing, the Court held a criminal forfeiture hearing and ultimately ordered the forfeiture of the defendant's residence at 13475 Elm Circle, Omaha, Nebraska 68144, as well as monies contained in various financial accounts. Filing 108 (Text Minute Entry); Filing 125 (Amended Preliminary Order of Forfeiture); Filing 163 (Final Order of Forfeiture). Based on evidence presented at the criminal forfeiture hearing, the Court concluded that some property sought by the Government should not be forfeited, including three checks totaling $24,083.44 from Caroline Benson, the defendant's friend, that had been deposited into the defendant's savings account and five checks totaling $710.00 from Kristine Benson, Caroline's mother, that had been deposited into the defendant's checking account. Filing 112 at 1. Together, the checks from the Bensons totaled $24,793.44.

The defendant appealed and the Eighth Circuit Court of Appeals affirmed the Court's judgment. *See United States v. Trouba*, No. 23-1143, 2023 WL 8539667, at *1 (8th Cir. Dec. 11, 2023). Later, the defendant filed the underlying *pro se* Motions to Return Property seeking the return of the defendant's "house, hot tub, gazebo, 500,000 dollars, [h]is truck," his "fridge, his microwave, washer [and] dryers," his "wana gummies which are deemed to be hemp," and his "cell phones, tablet, [and] laptop computer," among other things. Filing 177; Filing 178. In a previous order, the Court construed the defendant's motions as being made pursuant to Federal Rule of Criminal Procedure 41(g), which provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Filing 188; Fed. R. Crim. P. 41(g).

The Court's prior order disposed of most of the issues raised by the defendant's motions, but it ordered the Government to respond to the defendant's requests related to three categories of property: (1) appliances and yard accessories; (2) electronic devices; and (3) "Wana gummies" (*i.e.*, gummies containing some amount of THC). Filing 188 at 16. After the Government filed a response, the Court made the following determinations. First, the Court concluded that while the Government had shown that it was no longer in possession of the defendant's refrigerator, microwave, gazebo, hot tub, and washer and dryer, the Court could not determine what happened to that property without an evidentiary hearing. Filing 192 at 4. Second, the Court found that no evidentiary hearing was required to address the Government's possession of the defendant's electronic devices based on the Government's representation that it would release the devices once the statute of limitations for the defendant to seek collateral relief had fully elapsed. Filing 192 at 6. Third, the Court determined that an evidentiary hearing was necessary to evaluate whether the Wana gummies were

"contraband," as asserted by the Government, and therefore properly withheld from the defendant. Filing 192 at 7–8. The Court referred these issues to Judge Carson for an evidentiary hearing.

The evidentiary hearing focused on the first and third categories of property.[1] The defendant testified, as did Falyn Rowell, the United States Marshals Service's Asset Forfeiture Coordinator for the District of Nebraska. Regarding the first category of property—the appliances and yard accessories—the defendant testified that his 13475 Elm Circle residence contained two refrigerators (a white one in the garage and a four-door Samsung one in the kitchen), a gazebo in the backyard that had a hot tub inside it, a washer and dryer that were stacked, a microwave, and several other items of personal property that he had not previously mentioned. Filing 235 at 4–5 (citing Filing 233). Rowell testified that the Marshals Service first took possession of the defendant's residence on July 21, 2023, pursuant to a Final Order of Forfeiture, which triggered the Marshals Service's responsibility to prepare the property for disposition. Filing 235 at 5–6. Rowell testified that the residence was mostly cleaned out when she arrived on July 21, however there is evidence that the house contained a refrigerator in the kitchen (not the Samsung refrigerator), a refrigerator in the garage (also not the Samsung refrigerator), one stove, one dishwasher, one microwave, a washer and dryer unit, and a spa/hot tub. Filing 235 at 6; Filing 233 at 81–82. Rowell further testified that the residence was sold "as is" in February 2024, and the refrigerators, microwave, washer, dryer, hot tub, gazebo, and shed remained with the house. Filing 235 at 7; Filing 233 at 83–84. According to Rowell, between the time the Marshals Service took custody of the residence and the time the residence was sold, no one made any claim on any property items in or at the residence. Filing 235

---

[1] During the evidentiary hearing, the Government stipulated that the electronic devices in the second category of property could be released to the defendant because all collateral relief had been exhausted. Filing 235 at 3; Filing 233 at 5.

at 7; Filing 233 at 84. The realtor who listed the residence, Scott Bergman, stated in email correspondence that he considered the microwave to be a fixture in the kitchen, as it was permanently attached above the stove, and the gazebo to be a fixture in the backyard, as it was also permanently attached. Filing 235 at 7; Filing 222-24. Bergman also described the refrigerator(s), washer, and dryer as personal property of the type commonly included in a sale or a residence. Filing 235 at 7; Filing 222-24.

Regarding the third category of property—the Wana gummies—the defendant testified that at the time of his arrest, he had approximately 5,000 jars of Wana gummies in his residence that he had purchased for approximately $30 each, though he did not contest on cross-examination that the police report identified only 173 Wana gummy containers in his residence. Filing 235 at 5; Filing 233 at 35, 49. The defendant testified that it was his understanding that he could legally possess the Wana gummies in the state of Nebraska under the 2018 Farm Bill as long as the gummies contained less than 0.3% of THC. Filing 235 at 5; Filing 233 at 35. The defendant admitted that he exclusively sold marijuana and that he sold the Wana gummies, which were a CBD product, to people who did not smoke marijuana. Filing 235 at 5; Filing 233 at 49. When asked whether he was authorized to sell THC and/or CBD products, such as the Wana gummies, the defendant invoked his Fifth Amendment privilege against self-incrimination. Filing 235 at 5; Filing 233 at 60.

## II.  MOTIONS TO RETURN PROPERTY

Following the evidentiary hearing, Judge Carson entered a Findings and Recommendation recommending that the Court deny the defendant's Motions to Return Property. Filing 235 (Findings and Recommendation); Filing 177 and Filing 178 (Motions to Return Property). After setting forth the standards governing a Rule 41(g) motion, Judge Carson concluded that the first category of property—the appliances and yard accessories—either became fixtures and remained with the

5

defendant's residence or were items of personal property that were never seized. Specifically, Judge Carson determined that the gazebo, microwave, and shed had "become a part of the real estate" and that because the real estate was "undisputably subject to criminal forfeiture," the property was therefore not seized under Rule 41(g). Filing 235 at 8–9 (quoting *Griffith v. Drew's, LLC*, 860 N.W.2d 749, 760–61 (Neb. 2015)). There were other items of property that the defendant had stated were in his residence at the time he was arrested but that had been clearly removed from the residence by the time of forfeiture, including the Samsung refrigerator, and as to these items Judge Carson concluded that "no physical seizure of those particular items occurred" because the evidence suggests the defendant's friends and family removed multiple items from the residence while it was inaccessible to law enforcement. Filing 235 at 11. Finally, regarding any items of personal property remaining in the residence after it was forfeited, Judge Carson explained that those items had been voluntarily abandoned based on evidence that the defendant "had the time and opportunity, at least through others, to remove items of personal property" that he wanted to keep before the forfeiture was made final. Filing 235 at 12. Judge Carson found that the third category of property—the Wana gummies—constituted derivative contraband that became "forfeitable because of unlawful use" and was therefore "not subject to return under Rule 41(g)." Filing 235 at 13 (quoting *United States v. Felici*, 208 F.3d 667, 670–71 (8th Cir. 2000), *abrogated on other grounds by Henderson v. United States*, 575 U.S. 622 (2015)).

The defendant filed a timely objection to Judge Carson's Findings and Recommendation, but he only objected to Judge Carson's conclusions about the Wana gummies. Filing 236. Because the defendant did not object to Judge Carson's findings and recommendation regarding the appliances and yard accessories, the defendant has waived his right to challenge those findings. *See* NECrimR 59.2(e). The Court therefore accepts Jude Carson's findings and recommendation as to

the appliances and yard accessories and denies the defendant's motions as to that category of property. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations *to which objection is made.*" (emphasis added)). However, because the defendant has objected to Judge Carson's findings and recommendation regarding the Wana gummies, the Court has conducted a *de novo* review of that issue pursuant to 28 U.S.C. § 636(b)(1)(C). The Court concurs in Judge Carson's well-reasoned legal analysis.

As the Court already briefly mentioned, Judge Carson found that the Wana gummies constituted derivative contraband and were not subject to return under Rule 41(g). Courts have recognized two types of contraband: contraband per se and derivative contraband. *See Felici*, 208 F.3d at 670. "Contraband per se is property the mere possession of which is unlawful." *Id.* (quoting *United States v. Eighty-Eight Thousand, Five Hundred Dollars*, 671 F.2d 293, 297 n.9 (8th Cir. 1982)). "Derivative contraband [is property that] may be lawfully possessed but which became forfeitable because of unlawful use." *Id.* (quoting same). If property is contraband, it is not subject to return under Rule 41(g). *See Jackson v. United States*, 526 F.3d 394, 397 (8th Cir. 2008) ("A Rule 41(g) motion 'is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." (quoting *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002))). Similarly, the equitable doctrine of unclean hands may counsel against returning property pursuant to a Rule 41(g) motion.  The unclean hands doctrine "allows a court to withhold equitable relief if such relief would encourage or reward illegal activity." *Felici*, 208 F.3d at 670–71 (citing *United States v. Giovanelli*, 807 F.Supp. 351, 357 (S.D.N.Y. 1992), *rev'd on other grounds*, 998 F.2d 116 (2d Cir. 1993)).

7

In *Felici*, a drug case, the Eighth Circuit Court of Appeals considered whether a district court could deny a motion to return property[2] "without receiving additional evidence based upon the doctrine of unclean hands or the property's status as derivative contraband." *Felici*, 208 F.3d at 670–71. There, the Circuit determined that the Government could resist a defendant's motion to return property by asserting "a limited derivative contraband theory, i.e., that the items sought to be returned were in fact utilized or intended to be utilized by the person who possessed them for the manufacture, storage, or transportation of controlled substances," but the Circuit found that the district court erred by not receiving evidence before adopting the Government's theory. *Id.* at 671. In recognizing a limited derivative contraband theory, the *Felici* court explained "that it makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized." *Id.*; *see also United States v. Howard*, 973 F.3d 892, 895 (8th Cir. 2020) ("We have explained that 'it makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized.'" (quoting *Felici*, 208 F.3d at 671)).

The defendant argues that the Wana gummies are not derivative contraband because they are distinguishable from the property in *Felici*. The property considered by the district court in *Felici* included:

> (1) a liquid wrench can with a false bottom, (2) a Dr. Pepper can with a false bottom, (3) two silver cylinders, (4) Ohaus digital scales, (5) seven books concerning the manufacturing of methamphetamine and cocaine, (6) a Fisher/Ainsworth heat melting point analyzer, (7) a yellow box of Manitol, (8) a can of Country Time with a false bottom, (9) Ohaus three-beam scales, and (10) Ohaus triple beam scales.

---

[2] *Felici* references Rule 41(e), *see Felici*, 208 F.3d at 669, but "[o]n December 1, 2002, Rule 41(e) was redesignated Rule 41(g) without substantive changes," *Jackson*, 526 F.3d at 396 n.1.

*Felici*, 208 F.3d at 669. The Circuit explained that if the evidence ultimately showed that those items were "utilized or intended to be utilized by the person who possessed them for the manufacture, storage, or transportation of controlled substances," the items could constitute derivative contraband that did not need to be returned under Rule 41. *Id.* at 671. The defendant attempts to distinguish the items in *Felici*, which he describes as "further[ing] a drug business," from the Wana gummies, which he argues were not used to "hide, weigh, learn how to make, or make drugs." Filing 236 at 2. This argument is not compelling. Rather, the evidence shows that the defendant used the Wana gummies to further his illegal drug business, making them derivative contraband. Indeed, the defendant testified that his drug business consisted of "straight weed" but that the Wana gummies "were something that [he] sold as a CBD product for people that did not smoke marijuana." Filing 233 at 48–49. It is therefore clear that the Wana gummies were used in the defendant's illegal trade, even if the gummies themselves may have been legal.[3]

---

[3] As Judge Carson explained in his Findings and Recommendation, there are some CBD or hemp products that are legal under the Nebraska Farm Bill Act. Filing 235 at 14 (citing Neb. Rev. Stat. § 2-503). The defendant has consistently argued that the Wana gummies were "legal CBD products, 50 state legal." Filing 233 at 48; Filing 236 at 1. Because the Court finds that the Wana gummies are derivative contraband and therefore not subject to return, the Court does not consider whether the Wana gummies fall within the Nebraska Farm Bill Act. Moreover, even if it was legal for the defendant to possess the Wana gummies, it is not at all clear that the defendant was authorized to sell them. During the evidentiary hearing, counsel for the Government asked the defendant whether he had "authorization to sell THC or CBD products." Filing 233 at 58. Instead of answering the question, the defendant (upon advice of his counsel) invoked his Fifth Amendment privilege against self-incrimination. Filing 233 at 58.

It is well-established that a factfinder cannot draw adverse inferences from a defendant's invocation of the Fifth Amendment privilege in a criminal proceeding. *See United States v. Reyes*, 362 F.3d 536, 541 (8th Cir. 2004) (explaining that "the Constitution forbids any adverse inferences" from a defendant's privilege invocation in a criminal case "because allowing such inferences would burden the defendant's right not to incriminate himself"). On the other hand, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 319–20 (1976) (holding that "permitting an adverse inference to be drawn from an inmate's silence at his disciplinary proceedings is not, on its face, an invalid practice"). Rule 41(g) proceedings that "come[ ] after the termination of criminal proceedings" are "treated as a civil action for equitable relief." *United States v. Mendez*, 860 F.3d 1147, 1149–50 (8th Cir. 2017). Judge Carson reminded the defendant and his counsel of the civil nature of the Rule 41(g) proceeding in this case, and he noted in his Findings and Recommendation that he "dr[e]w an adverse inference from [the defendant's] invocation" of the Fifth Amendment specifically in response to the Government's question of whether the defendant was legally authorized to sell THC or CBD products. Filing 233 at 54–55; Filing 235 at 15. In ruling on the defendant's objection to Judge

Because the Wana gummies were linked to the defendant's criminal conduct, the Court further concludes that the defendant does not have "clean hands" regarding the gummies. *See Felici*, 208 F.3d at 670–71 ("The doctrine of unclean hands is an equitable doctrine that allows a court to withhold equitable relief if such relief would encourage or reward illegal activity."); *United States v. White*, No. 21-11270, No. 21-11503, 2022 WL 2297541, at *5 (11th Cir. June 27, 2022) (per curiam) (concluding that the defendant was not entitled to the return of the contents of an email account that he blind copied on threatening emails sent from a separate email account because the blind-copied account "was used in the commission of Defendant's crimes"); *United States v. Davis*, 836 Fed.Appx. 783, 788 (11th Cir. 2020) (per curiam) (explaining that the defendant's unclean hands barred equitable relief because the data that the defendant sought the return of—data that had been compiled from multiple computer hard drives taken from the offices of the defendant's company—was "linked to his fraudulent conduct"). Given the defendant's unclean hands in this matter, the Court finds that returning the Wana gummies would only "encourage, or reward (and thereby encourage), illegal activity." *Giovanelli*, 807 F.Supp. at 357. Accordingly, the Court agrees with the magistrate judge's conclusion that the defendant's Motions to Return Property should be denied. The defendant's Objection to Findings and Recommendation is overruled, and Judge Carson's Findings and Recommendation is adopted.

Because the Court has denied the defendant's Motions to Return Property, the defendant no longer requires appointed counsel related to those motions. *See* Filing 192 at 8 (appointing counsel for the limited purpose of representing the defendant at the evidentiary hearing on his Motions to

---

Carson's Findings and Recommendation, the Court has conducted a *de novo* review of the record. The Court concludes that there is sufficient evidence to support a finding that the Wana gummies are derivative contraband and that the defendant is not entitled to their return under the doctrine of unclean hands even without drawing adverse inferences from the defendant's invocation of his Fifth Amendment privilege.

Return Property). The Court therefore denies the defendant's motion to "appoint [him] a new lawyer for [his] 41g motion." Filing 246 at 1.

### III. MOTION REQUESTING RETURN OF MONEY

The Court now turns to the defendant's Motion Requesting Return of Money. Filing 234. In this *pro se* motion, the defendant requests "that the United States government return $24,793.44, which was order[ed] returned in November 29, 2022 order." Filing 234 at 1. According to the defendant, the Government "allegedly sent [the money] to a lawyer who has no involvement in Mr. Trouba's case," a "grave error" that the defendant would like corrected. Filing 234 at 1. The defendant would also like "interest on such money," as well as "compensation of $100,000." Filing 234 at 1–2. The defendant further requests that the Court "hold the USA in contempt of court [and] recommend disbarment of USA attorney involved with this gross misconduct." Filing 234 at 2. Finally, the defendant alleges that "the D[EA] has yet to provide [him] with proof of seisure [sic] of his truck F150 2013 thus failure to provide [him] due process."[4] Filing 234 at 2.

In a November 29, 2022, order, the Court concluded that $24,793.44 that Caroline and Kristine Benson had paid to the defendant was not subject to forfeiture. Filing 112 at 1. In August of 2023, after the defendant had been sentenced and after the Court had entered a Final Order of Forfeiture addressing the property that was subject to forfeiture, the Government filed a Certificate of Service of Receipt of Return of Funds by Attorney John K. Green. Filing 166. That document states in full: "COMES NOW John K. Green, attorney for Caroline Benson and Kristine Benson

---

[4] As the defendant's plea agreement makes clear, the defendant's "silver Ford F-150 pickup truck, bearing Vehicle Identification Number 1FTFW1ETXDKD81352, seized on or about September 18, 2020," was administratively forfeited before the defendant was sentenced in this case. Filing 92 at 1; Filing 1 at 2. The statute governing the administrative forfeiture of the defendant's truck, 18 U.S.C. § 983, requires the Government to send written notice of the administrative forfeiture proceeding to interested parties following the seizure of the property. The fact that the defendant agreed in his plea agreement that the truck had been administratively forfeited precludes the defendant's argument that he did not receive notice under the statute.

hereby acknowledges receipt of $24,083.44 and $710.00 in United States currency, totaling $24,793.44 from the U.S. Marshals Service paid to the U.S. Bank Trust Account." Filing 166 at 1. Thus, it appears that the defendant is correct that the $24,793.44 was returned to an attorney who does not represent him.

However, this does not automatically constitute a "grave error." "When a criminal proceeding is completed, the government has a duty to return property in its custody to the rightful owner, unless it is subject to forfeiture." *United States v. Fonesca*, 790 F.3d 852, 855 (8th Cir. 2015). Although "the person from whom property is seized is presumed to have a right to its return" under Rule 41(g), the Government can rebut that presumption of ownership by "showing a cognizable claim of ownership or right to possession adverse to the movant's." *Jackson* 526 F.3d at 396–97. The Court has already ruled that the $24,793.44 was not subject to forfeiture, and it is clear that the Government no longer retains that money. Apparently, the Government decided that the Bensons were the rightful owners of the money that was deposited into the defendant's bank accounts. The Court will hear from the Government on this issue before proceeding further. The Government is therefore ordered to file a written response to the defendant's Motion Requesting Return of Money, Filing 234, on or before April 3, 2026.

### IV. REMAINING MOTIONS

Finally, the Court considers two additional *pro se* motions filed by the defendant, Filing 240 and Filing 241. Together, the motions explain that the defendant has been held in the state of Nebraska during the pendency of his Motions to Return Property. Filing 240 at 1; Filing 241 at 1. The defendant seeks a return to "BOP custody" so that his halfway house paperwork can be processed. Filing 240 at 1. Alternatively, the defendant seeks "compassionate release due to the lack of mental health care in county jail [and] prison." Filing 240 at 1; Filing 241 at 1. The defendant

identifies a number of complaints regarding his incarceration, including "uneddible food," ill-fitting clothing, cold water, refusal of glasses and medication, and more. Filing 240 at 1–2; Filing 241 at 1–2. The defendant also seeks compassionate release because President "Trump jost [sic] signed an executive order reclassifying marijuana from Schedule I to Schedule III, which would result in a lower sentence as well [as] a medical marijuana card for anxiety, depression, back pain [and] PTSD." Filing 241 at 1.

The Court first addresses the defendant's location of incarceration and his eligibility for placement at a halfway house. "There is no question that [18 U.S.C.] § 3621(b) provides the [Bureau of Prisons] with broad discretion to choose the location of an inmate's imprisonment," *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006), and it is the Bureau of Prisons (BOP) that "shall, to the extent practicable," place a defendant in a transitional facility near the end of his term of incarceration, 18 U.S.C. § 3624(c)(1). The Court therefore lacks authority to order the BOP to place the defendant at a certain facility, including a halfway house. *See* 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."). However, to the extent the defendant's placement depended on his pending Motions to Return Property, those motions have now been denied.

Second, the Court turns to the defendant's requests for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), prisoners may move to reduce their terms of imprisonment on their own after exhausting their administrative remedies. "Exhaustion occurs at the earlier of either: (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the

warden of the [prisoner's] facility.'" *United States v. Houck*, 2 F.4th 1082, 1083–84 (8th Cir. 2021)

(alteration in the original) (citing 18 U.S.C. § 3582(c)(1)(A)). The defendant admittedly has not

exhausted his administrative remedies in this case, but he argues that he was unable to do so because

he is "currently in Douglas County Jail therefore [he] can not ask for compassionate release from

[the] warden." Filing 241 at 1. Other courts faced with this issue have recognized the "awkward

procedural posture" that arises when a defendant seeks compassionate release while not in a BOP

facility. *United States v. Robinson*, No. 19-CR-0143 (PJS/BRT), 2021 WL 528002, at *1 (D. Minn.

Feb. 12, 2021) (addressing the "unique circumstances" of the defendant's motion for compassionate

release but ultimately holding that "even if [the defendant] had clearly exhausted his administrative

remedies, the Court would deny his request"). The Court likewise acknowledges that the defendant

probably faced difficulties in exhausting his administrative remedies here, but the Court concludes

that even if the defendant had exhausted his administrative remedies, his motions for compassionate

release would fail on the merits.

> Section 3582(c) provides in relevant part:
>
> [T]he court . . . may reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment), after considering the factors
> set forth in section 3553(a) to the extent that they are applicable, if it finds that . . .
> extraordinary and compelling reasons warrant such a reduction . . . and that such a
> reduction is consistent with applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(1)(A). The burden to establish an entitlement to a sentence reduction is on the

prisoner. *See United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022). "[T]he district

court is not required to investigate possible avenues for relief or to develop the record in support of

a motion." *Id.* Nor must a district court "make a specific rejoinder to every circumstance cited in

support of a reduction." *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020). Furthermore,

because district courts have "broad discretion" when considering whether the 18 U.S.C. § 3553(a) sentencing factors warrant early release, a district court does not abuse its discretion simply because "other district courts may have granted compassionate release for defendants with similar backgrounds." *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021).

Although not binding on the Court, the policy statement in U.S.S.G. § 1B1.13 is helpful to the Court's analysis. *See Marcussen*, 15 F.4th at 859 (explaining that U.S.S.G. § 1B1.13 is a policy statement that is "not binding" but "may not be ignored"). Section 1B1.13(b) sets out multiple circumstances that may constitute "[e]xtraordinary and compelling reasons" warranting a sentence reduction. The provisions most pertinent to the defendant's two motions include § 1B1.13(b)(1), Medical Circumstances of the Defendant; § 1B1.13(b)(5), Other Reasons; and § 1B1.13(b)(6), Unusually Long Sentence; however, none of the defendant's allegations constitute extraordinary and compelling reasons justifying a reduced sentence.

For instance, although the defendant alleges various medical issues—he has experienced a "lack of mental health care," he was apparently "refused [his] medication" for a period of time, the "jail medical staff refused to trust [his] need for glasses," he "put a sick [sic] in and haven't been seen in over a week," he has "received little treatment for [his] mental issues and no treatment for [his] autism," he gets "constant headaches from [v]ision," and he was "sick with sore throat [and] cough and all the[y] [gave him was] tynenol [sic] [and] musnix [sic] pills," Filing 240 at 1–2; Filing 241 at 1–2—none of those ailments or issues rise to the level of seriousness contemplated by U.S.S.G. § 1B1.13(b)(1). The defendant also presents "other reasons" for a reduced sentence— including that he has "not been fed lunch 2 times by [BOP] [and] US Marshalls [sic] at Omaha court house," that he has been "house[d] at facilities without clothes to fit [him] and with "uneddible food" and "no mattresses," that "[t]he unit is never clean nor are the showers," that the "water in the

showers is freezing and never hot," and that "on one tray mold was actively growing on the cakes," Filing 240 at 1–2; Filing 241 at 1–2—but these complaints are not "similar in gravity to" the circumstances described in U.S.S.G. § 1B1.13(b)(1) through (b)(4). U.S.S.G. § 1B1.13(b)(5). Finally, the defendant seeks compassionate release based on an apparent change in the law promulgated in an executive order "reclassifying marijuana from Schedule I to Schedule III." Filing 241 at 1; *see* U.S.S.G. § 1B1.13(b)(6) (explaining that one consideration in determining whether a defendant has presented extraordinary and compelling reasons for a reduced sentence is "a change in the law" when the "defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment"). Given that the defendant is currently serving a 10-year term of incarceration, he did not receive "an unusually long sentence" and he has not "served at least 10 years" of it. U.S.S.G. § 1B1.13(b)(6). Moreover, the defendant has not actually identified a change in the law, as the executive order that he cites only orders the United States Attorney General to "take all necessary steps *to complete* the rulemaking process related to rescheduling marijuana to Schedule III of the [Controlled Substances Act] in the most expeditious manner in accordance with Federal law." Executive Order No. 14370, Increasing Medical Marijuana and Cannabidiol Research, 90 Fed. Reg. 60541 (2025) (emphasis added). The defendant has therefore not shown extraordinary and compelling reasons under U.S.S.G. § 1B1.13(b)(6), either.

Even if the defendant had demonstrated extraordinary and compelling reasons supporting compassionate release, the Court would still deny the defendant's motions because the 18 U.S.C. § 3553(a) sentencing factors do not weigh in favor of a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020) (upholding the district court's denial of compassionate release where the district court had concluded that the 18 U.S.C. § 3553(a) factors weighed against granting compassionate release regardless of whether the defendant had

demonstrated extraordinary and compelling reasons for release). In reaching this decision, the Court has considered, among other factors, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1) and (2)(A). The Court has also considered the need "to afford adequate deterrence to criminal conduct" and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B) and (C). Prior to his conviction in this case, the defendant ran a sophisticated drug trafficking operation involving hidden compartments, high-tech security, and hundreds of thousands of dollars. He came to the attention of law enforcement only after he made a bomb threat at the Douglas County Courthouse by placing two packages near the entrance of the courthouse. His criminal history includes multiple prior drug convictions in state court, many of which resulted in fines and clearly did not deter the defendant from committing further drug crimes. When considered in light of the 18 U.S.C. § 3553(a) factors, these facts and others made known to the Court throughout the life of this case weigh against reducing the defendant's sentence. The Court would therefore deny the defendant's requests for compassionate release even if he had demonstrated extraordinary and compelling reasons warranting a sentence reduction. Accordingly, the defendant's motions at Filing 240 and Filing 241 are denied.[5]

---

[5] At the end of his motion at Filing 240, the defendant expresses that he "would also like to file an 8th amendment violation regarding excessi[ve] fine of taking [his] house [and] cars [and] roughly half million in cash." Filing 240 at 2. He also requests that "all [his] legal property from [D]ouglas [C]ounty" be released to his mother "regarding electronics, duffle bags, starilite [sic] black totes, money counter, magnetic mixer, tools, police radar detector, and roughly 4,730 Wana gummies missing from [his] house." Filing 240 at 2. The defendant states that "federal government never took legal postion [sic] of [his] house per county records." Filing 240 at 2. Given that these arguments are made in passing with no additional support or factual allegations, the Court does not consider them at this stage.

## V. CONCLUSION

For the reasons stated above, the Court overrules the defendant's objection to Judge Carson's Findings and Recommendation on the defendant's Motions to Return Property. The Court adopts Judge Carson's Findings and Recommendation and denies the Motions to Return Property. Because the Rule 41(g) proceedings associated with the defendant's Motions to Return Property have concluded, the Court denies the defendant's Motion to Appoint New Lawyer. The Government is ordered to respond to the defendant's Motion Requesting Return of Money, and the defendant's remaining two motions are denied. Accordingly,

IT IS ORDERED:

1. The defendant's Objection to Findings and Recommendation, Filing 236, is overruled;

2. The United States Magistrate Judge's Findings and Recommendation, Filing 235, is adopted;

3. The defendant's Motions to Return Property, Filing 177 and Filing 178, are denied;

4. The defendant's Motion to Appoint New Lawyer, Filing 246, is denied;

5. The Government is ordered to file a written response to the defendant's Motion Requesting Return of Money, Filing 234, on or before April 3, 2026; and

6. The defendant's remaining motions, Filing 240 and Filing 241, are denied.

Dated this 4th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge

18